Filed 2/10/23 In re J.B. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | B321494 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.J.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK74503D) |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge. Conditionally reversed with directions.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother appeals from the June 10, 2022 order terminating her parental rights under Welfare and Institutions Code section 366.26[1] as to J.B. (minor). Mother's sole contention on appeal is that the court erroneously failed to ensure compliance with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.). Los Angeles County Department of Children and Family Services (the Department) contends the court's ICWA determination is supported by substantial evidence, and any inquiry error is harmless. We find the court's ICWA finding to be in error, and we conditionally reverse the matter solely for the juvenile court to ensure compliance with ICWA and related California statutes.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prior dependency case*

Minor's mother and half-siblings were parties in a prior dependency case in 2008.[2] In that case, mother had claimed possible Choctaw ancestry out of Louisiana through mother's

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The half-siblings are not parties to the current appeal.

maternal grandmother, and possible Cherokee ancestry through mother's paternal grandfather. The Department interviewed mother's maternal grandmother, who denied knowledge of any Indian ancestry. In 2008, the Department sent ICWA notices and received letters from the Cherokee Nation, the Jena Band of Choctaw Indians, the Keetoowah Band of Cherokee Indians in Oklahoma, and the Cherokee Boys Club indicating that identified half-siblings were not members or eligible for membership in their tribes. Mother continued to claim Indian ancestry, naming the tribe as Cherokee. In 2012, the court found ICWA did not apply to the half-siblings.

*ICWA inquiry in the current case*

The current case began in September 2012, when the Department filed a petition under section 300, alleging minor was at risk of harm based on domestic violence between mother and minor's father. The detention report noted the ICWA finding from the prior dependency case, involving minor's half-siblings and a different father. On September 14, 2012, mother told a social worker she had Cherokee ancestry. On November 27, 2012, however, mother filed an ICWA-20 form stating she had no Indian ancestry. The form directed mother to advise all parties and the court if she obtained new information regarding Indian ancestry. Father's first court appearance was on December 18, 2012, and the court declared him minor's presumed father.[3] Although the record does not contain an ICWA-20 form completed

---

[3] Father is not a party to this appeal.

by father or a reporter's transcript, the minute order stated that the court found ICWA inapplicable.

At the February 5, 2013 adjudication and disposition hearing, the court sustained the petition allegations, removed minor from father's custody, and placed minor with mother. Father had monitored visits for which mother could not be the monitor. Mother was subsequently arrested in July 2013. The social worker went to mother's home, where he found father with minor. The social worker informed father that minor might be placed in protective custody. Father arranged for minor's paternal grandfather to pick up father and minor, and all three left together. Father and paternal grandfather were unwilling to provide contact information. The social worker sought that information from mother, who clearly had a way to contact them, but she refused to provide father or paternal grandfather's phone number, at least for some period. The social worker obtained contact information for paternal grandfather and grandmother in August 2013 for them to act as minor's caretakers.

Mother and father again denied any Indian ancestry in the fall of 2013, and the court again found ICWA inapplicable. Mother later informed the Department that both her parents had passed—her mother when she (mother) was a toddler, and her father seven years ago.

Between 2013 and 2022, the court upheld a subsequent petition and removed minor from parental custody, ordered and then terminated reunification services, and denied mother's request to reinstate reunification services or return minor to her custody.

On June 10, 2022, the court terminated parental rights under section 366.26.

4

## DISCUSSION

Relevant Law and Standard of Review

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Both ICWA and California law define an " 'Indian child' " as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

California statutory law incorporates the requirements of ICWA and imposes some additional requirements as well. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742.) "The Department's first-step inquiry duty under ICWA and state law was broader [than what is required of a court making inquiry under federal law], requiring it also to interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) Federal regulations explain that the term "extended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law,

5

niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).) When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is required. (§ 224.2, subd. (e); *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14.) "We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.*, at p. 438.)

Analysis

Mother contends that reversal is required because the inquiry requirements of ICWA and related California law were not satisfied in this case. Specifically, mother contends the Department did not ask paternal grandparents, maternal aunts E.S. and M.P-H., or paternal aunt M.P.,[4] all of whom were involved in the case and in contact with the Department, about the possibility that minor had Indian ancestry.

The Department argues that there is substantial evidence to support the court's implied finding that ICWA did not apply, pointing to prior ICWA notices concerning minor's half-siblings, which resulted in a no-ICWA finding, multiple statements by mother and father denying any Indian ancestry, and mother's failure to object to the court's earlier determinations or to come forth with any information during the length of this case. The Department also argues that to the extent it was error to find ICWA inapplicable without asking available extended family members, such an error should be found harmless because nothing in the record shows that questioning those family

---

[4] The various reports inconsistently refer to M.P. as a nonrelated extended family member and as a paternal aunt.

members would provide a reason to believe that minor was an Indian child or had any Indian ancestry. Acknowledging the current split among appellate courts on how or whether an ICWA error may be prejudicial, the Department argues that mother cannot establish prejudicial error, because the record does not contain any information suggesting minor might have any Indian ancestry, or that inquiry of available relatives might result in a different ICWA finding.

Recognizing that the Department did inquire and provide notice to tribes in the prior dependency proceeding involving minor's half siblings, we still conclude that in the absence of any evidence that the Department asked available extended family members about the possibility of Indian ancestry in the current dependency proceeding, it is prejudicial error for the trial court to find ICWA inapplicable. (See, e.g., *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [prejudicial error when Department fails to discharge its first step duty of inquiry]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741 [court must ask each participant in child custody proceeding].) In addition to the fact that paternal relatives were not involved in the prior dependency, there is no evidence that maternal relatives other than maternal great-grandmother were asked about the possibility of Indian ancestry. "By requiring the Department to inquire of a child's extended family members as to the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431.)

## DISPOSITION

The juvenile court's June 10, 2022, order terminating parental rights under Welfare and Institutions Code section 366.26 is conditionally reversed with directions to order the Department to make reasonable efforts to interview available relatives who have been in contact with the Department, including the paternal grandparents, maternal aunts E.S. and M.P-H., and possible paternal aunt M.P., about the possibility of the mother's Indian ancestry and to report on the results of the Department's investigation. Nothing in this disposition precludes the court from ordering additional inquiry of available extended relatives or others having an interest in the child. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating parental rights is to be reinstated. If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related California law.

NOT TO BE PUBLISHED.


                                        MOOR, J.


I concur:


          RUBIN, P. J.


8

In re J.B.
B321494


BAKER, J., Dissenting



  I would affirm because substantial evidence supports the juvenile court's finding that the Indian Child Welfare Act (ICWA) does not apply.  (*In re A.C.* (2022) 86 Cal.App.5th 130 (dis. opn. of Baker, J.); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984; *In re H.V.* (2022) 75 Cal.App.5th 433 (dis. opn. of Baker, J.).)



      BAKER, J.